IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**DEONTA LATRAVIN KELLY**                                                          **PLAINTIFF**

**v.**                                                     **No. 4:20CV88-RP**

**PELICIA E. HALL, ET AL.**                                                     **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Deonta Latravin Kelly, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendant used excessive force against him during the effort to restore and maintain order during a prison riot. The defendant has moved [49] for summary judgment; the plaintiff has not responded to the motion, and the deadline to do so has expired. For the reasons set forth below, the motion by the defendant for summary judgment will be granted, and judgment will be entered in favor of the defendant.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**The Plaintiff's Claims**

Deonta Latravin Kelly, an inmate with the Mississippi Department of Corrections ("MDOC"), filed suit alleging use of excessive force on or around January 1, 2020, during the beginning of a full-scale prison gang riot at the Mississippi State Penitentiary ("MSP") in Parchman, Mississippi. Kelly filed his Complaint on May 26, 2020. Doc. 1. He seeks compensatory, nominal, and punitive damages.[1] Doc. 1 at 5. On July 29, 2021, Kelly gave sworn testimony clarifying his claims against the defendant Spencer at a *Spears* hearing.[2] The factual basis for Kelly's claims are outlined in the court's February 2, 2021, memorandum opinion:

> On January 1, 2020, at the Mississippi State Penitentiary, Officer Spencer escorted plaintiff Deonta Latravin Kelly and other inmates to the exercise yard with their hands zip-tied behind their backs. The inmates were placed on the yard because of a disturbance on another zone in the unit. On the way to the yard, Officer Spencer shot inmate Aaron Moore. Warden Simon then told Officer Spencer and other officers to return the inmates to the zone, and they did. Once the inmates entered the zone, the officers placed them face down on the floor; the inmates' hands were still bound. Mr.

---

[1] Kelly does not indicate whether he is suing Spencer is in official or individual capacity. Indeed, the plaintiff did not name Spencer as a defendant in the Complaint. Defendant Spencer was added after the *Spears* hearing. Given this ambiguity, the court will address the claims against Spencer in both his official and individual capacities.

[2] *See Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985) (allowing hearing to clarify claims made by *pro se* litigants).

> Kelly's head was, however, directly over a pool of bloody water, so he lifted his head, rather than placing it on the floor, as ordered. Officer Spencer then stood over him and shot him in the face with a shotgun loaded with rubber pellets. The shot rendered Mr. Kelly unconscious, and he woke up in the van on the way to Unit 42 Hospital at Parchman. He sustained injuries requiring stitches to his face, head, and neck from the encounter.

Doc. 16 at PageID 38.

Though Kelly alleged this sequence of events (as outlined in the Memorandum Opinion), he has no personal knowledge to identify Spencer as the person who shot him in the face (as Kelly was lying facedown in the dark during the events). *See* Motion Exhibit "A"[3] at p. 5, ll. 15-18; p. 9, ll. 11-19. Kelly's only basis for naming Spencer as the shooter is that other unnamed inmates allegedly told him so. *Id*. at p. 10, ll. 1-7. Kelly has not stated when he might have received this information, but it was after he filed this case (May 26, 2020), as he did not mention Spencer in the Complaint.

**Undisputed Material Facts**

The court has derived the undisputed material facts from the plaintiff's allegations arising from his personal knowledge, as well as documentary evidence submitted during the summary judgment process.[4] For the purposes of this memorandum opinion only, the court has taken the plaintiff's relevant factual allegations to be true.

**Facts from the Complaint and *Spears* Hearing**

A large and well-documented prison riot was taking place during the events relevant to the present case. On January 1, 2020, at the Mississippi State Penitentiary, Officer Spencer escorted plaintiff Deonta Latravin Kelly and other inmates to the exercise yard with their hands zip-tied behind

---

[3] The exhibits referenced in this memorandum opinion may be found attached to the defendant's motion for summary judgment.

[4] There is some overlap between the section setting forth the plaintiff's claims and the present section.

their backs. Doc. 1. The inmates were placed on the yard because of a disturbance on another zone in their unit during the prison gang riot. *Id*. Warden Simon told Officer Spencer and other officers to return the inmates to the zone, which they did. *Id*. Once the inmates entered the zone, the officers placed them face down on the floor; the inmates' hands were still bound. *Id*. Mr. Kelly's head was, however, directly over a pool of bloody water, so he lifted his head, rather than placing it on the floor, as ordered. *Id*. An officer then stood over Kelly and shot him in the face with a gun loaded with rubber pellets. *Id*., *Spears* transcript (Doc. 49-1). The shot rendered Mr. Kelly unconscious, and he woke up in the van on the way to Unit 42 Hospital at Parchman. *Id*.

**Facts from Plaintiff's Medical Records**

According to Kelly's statement to medical staff during his visit following the January 1, 2020, incident, he was involved in a fight or brawl during which he was struck by rubber pellets. Motion Exhibit "D," at MDOC-KELLY-000626. He sustained scalp and skin lacerations requiring three sutures each – and a small, three-millimeter rubber pellet superficially lodged in the midline of his neck (which was removed without difficulty). *Id*. at MDOC-KELLY-000625-26; MDOC-KELLY-000955.

**Facts from Defendant's Summary Judgment Exhibits**

Though unnamed inmates allegedly told the plaintiff that Officer Spencer was the shooter (*Spears* transcript (Doc. 49-1)), the plaintiff has no personal knowledge of the shooter's identity, and the documentary evidence shows that Spencer could not have been the shooter. Spencer did not use rubber pellet ammunition at the time Kelly claims to have been shot. *See* Motion Exhibit "C," Declaration of Tommie Spencer. Instead, Spencer used "thunder round" ammunition, which contained no rubber pellets. *Id*. Thunder rounds are designed to be fired into the air and make a loud noise to disorient the inmates so they will comply and get on the ground. *Id*. Thunder rounds do not contain rubber pellets or beanbags filled with rubber pellets. *Id*. Hence, Kelly has offered no proof that Spencer is the person who shot him in

the face, and Spencer did not have ammunition capable of causing Kelly's injuries. In addition, in order to quell the riot, the Mississippi Department of Corrections called on law enforcement agencies from around the state and at least one neighboring state. Doc. 49-3.

### Plaintiff's Completely Different Versions of the Events

Kelly filed two statements in his prison grievance (ARP # MSP-20-194 ) regarding the incident, and the statements reflect completely different versions of events. In his first ARP grievance letter, dated January 16, 2020, only fifteen days after the alleged incident, Kelly claims that he was shot at close range by Officer "John Doe." *See* Motion Exhibit "B." There is no mention of Spencer in the first grievance letter, and the facts set forth in the that letter are those alleged in this suit. However, in a second grievance letter (also part of ARP # MSP-20-194) from the same date (January 16, 2020), Kelly claims that on January 6, 2020, he was standing at the edge of his door when "the front gate of C Building ramp 32 opened and K9 Officer Spencer stepped in and fired twice for no reason [and] one of the beads stuck in my mouth." *Id*.

The letters describe entirely different scenarios. In one letter, Kelly complains that an unknown officer stood over him while he was lying on the ground with his hands tied behind his back, and shot him in the face. Doc. 49-2 at 4. In the other, Kelly alleges that, on January 6, 2020, Officer Spencer came into the zone while Kelly was standing at the door to his cell, and, for no reason, shot twice, causing a bead to stick in his mouth. Doc. 49-2 at 5. There have been no allegations in this case that Spencer shot Kelly on two different occasions, and Kelly did not testify to this effect in his *Spears* hearing. Doc. 49-1. Kelly received no medical treatment after January 1, 2020 (Doc. 49-5); there are no references in the complaint or the *Spears* hearing about a second incident (Docs. 1, 49-1), and he was never treated for a mouth injury (Doc. 49-5). Hence, while Kelly alleged in a prison

grievance that he was shot a second time on January 6, 2020, neither his complaint nor his medical records contain an entry to support that allegation. *Id*.

### Sovereign Immunity Under the Eleventh Amendment

The principle of sovereign immunity is reflected in the Eleventh Amendment, which precludes suits brought by private citizens against states in federal courts unless the State has waived its immunity. U.S. Const. amend. XI; *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Congress did not abrogate Eleventh Amendment immunity in enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Neither has Mississippi waived its right to sovereign immunity. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.") MDOC is an arm of the State of Mississippi and thus cloaked with immunity from suit under the Eleventh Amendment. *Hines v. Mississippi Dep't of Corr.*, 239 F.3d 366 (5th Cir. 2000).

As MDOC is an arm of the state, its officers and employees are officers of the state – and are entitled to sovereign immunity from monetary damages in their official capacities. *See Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("a suit against a state official in his or her official capacity ... is no different from a suit against the State itself."). Tommie Spencer (sued in his official capacity) is thus entitled to summary judgment, as he has sovereign immunity for Kelly's claims of monetary damage against him.[5]

---

[5] An exception to Eleventh Amendment sovereign immunity exists for suits against state officials in their official capacities for prospective injunctive relief only. *In Ex parte Young*, 209 U.S. 123, 159–160 (1908). Kelly has not, however, sought injunctive relief; thus, the *Young* exception does not apply in this case.

**Spencer, in his official capacity, is not person under § 1983**

Along with the Eleventh Amendment's bar as to Kelly's § 1983 claims, those claims are also precluded because Spencer is not a "person" under § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Generally, liability will attach when a plaintiff proves that an official (1) acted "under color of" law, and (2) the official's actions deprived the plaintiff of some right, privilege, or immunity secured by the Constitution or federal law. *Monroe v. Pape*, 365 U.S. 167, 171 (1961); *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). The State, arms of the State, and state officials sued in their official capacity are not "persons" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983.") Under the Supreme Court's holding in *Will*, Spencer is not a "person" and thus is not amenable to suit under § 1983. He is entitled to summary judgment for this reason, as well.

**Kelly's Claims Fail Because He Cannot Identify the Shooter**

Kelly testified at his *Spears* hearing that he had no personal knowledge regarding who fired the shot that lacerated his head and left a rubber bead embedded in his neck; instead, sometime after he filed this suit, unnamed inmates allegedly told him that Spencer was the shooter. Doc. 49-1. Such inadmissible hearsay does not rise to the level of competent summary judgment evidence. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the

extent not based on hearsay or other information excludable at trial.") Kelly's naming Spencer as the shooter is no more than an "unsubstantiated assertion[]," which, as set forth above, cannot support his summary judgment motion. *Hopper, supra*. Spencer, on the other hand, has provided an affidavit stating that he did not shoot Kelly during the riot, and, indeed, did not even use the type of ammunition that could have cause Kelly's injuries. Doc. 49-3. Hence, Kelly has offered no competent evidence to identify the shooter, and Spencer has offered evidence tending to show that he was not the shooter. As such, judgment will be entered in favor of defendant Spencer.

## Conclusion

For the reasons set forth above, the defendant's motion for summary judgment will be granted, and judgment will be entered in favor of defendant Spencer in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 3rd day of March, 2023.

/s/   Roy Percy
UNITED STATES MAGISTRATE JUDGE